(806 P.2d 472)

No. 64,696

STATE OF KANSAS, *Appellee,* v. PAUL J. HEMME, *Appellant.*

Petition for review denied May 9, 1991.

Opinion filed February 1, 1991.

*John C. Humpage,* of Topeka, for appellant.

*Michael C. Hayes,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before DAVIS, P.J., GERNON, J., and RALPH M. KING, JR., District Judge, assigned.

KING, J.: After convictions of one count of attempted possession of cocaine (K.S.A. 21-3301 and K.S.A. 1990 Supp. 65-4127a) and one count of possession of marijuana with intent to sell (K.S.A. 1990 Supp. 65-4127b[b][3]), Paul J. Hemme appeals the denial of his motion to suppress evidence seized pursuant to a search warrant. K.S.A. 22-2502.

On January 26, 1989, officers in Jefferson County executed a search warrant issued for the residence of Paul Hemme. Some of the items seized included 90 pounds of marijuana, a triple beam scale, forceps, lactose milk sugar, a jar with seeds, a paper with notations that are consistent with drug buys, a box of zip-lock baggies, and some glass vials with residue. Subsequently, many of these items tested positive for the presence of cocaine and marijuana.

Hemme moved to suppress the items seized pursuant to the search warrant, and a suppression hearing was held. Hemme contended the affidavit was defective. The court denied the motion to suppress. The case proceeded to a bench trial on stipulated facts, and the defendant was found guilty of attempted possession of cocaine and possession of marijuana with intent to sell. Hemme was sentenced to one to five years on the attempted possession of cocaine conviction and three to ten years on the possession of marijuana with intent to sell conviction.

The officer applying for the search warrant filed a sworn "Affidavit and Application for Search Warrant," to which he attached a signed, but unsworn, "voluntary statement" by Kasandra L. Riley. Hemme first contends that K.S.A. 22-2502 does not allow an additional unsworn statement to be attached to the affidavit supporting the search warrant.

Whether the statute in question disallows an unsworn informant's statement to be used by the court for a probable cause determination is a question of law, and "[t]his court's review of conclusions of law is unlimited." *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

The trial court essentially found that the application for the search warrant was sworn to by the requesting officer and the informant's statement did not have to be sworn to. We agree.

K.S.A. 22-2502 states in relevant part:

"(a) A search warrant shall be issued only upon the oral or written statement of any person under oath or affirmation which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes a person, place or means of conveyance to be searched and things to be seized. Any statement which is made orally shall be either taken down by a certified shorthand reporter, sworn to under

oath and made part of the application for a search warrant, or recorded before the magistrate from whom the search warrant is requested and sworn to under oath."

Hemme argues the informant's statement falls under the requirements of the statute and must be a sworn statement. This ignores, however, the fact that the police officer included the facts supporting the application for the search warrant in his affidavit, which was in writing and was sworn to under oath. This met the requirements of the statute.

## THE PROBABLE CAUSE INQUIRY

It is well settled that probable cause may be founded upon hearsay and information provided by informants. *Franks v. Delaware*, 438 U.S. 154, 165, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). The informant's identity does not need to be disclosed. 438 U.S. at 165. Here, the officer took the next step, in addition to his sworn affidavit, by attaching the hearsay evidence he possessed, which is arguably a better procedure, as long as he has sworn to everything in the hearsay statement. The purpose of the statute is "to insure a means of examining the evidentiary basis of a search warrant if later questions [arise]." *Hearron v. State*, 10 Kan. App. 2d 229, 233, 696 P.2d 418, *rev. denied* 237 Kan. 886 (1985). If anything, the officer eliminated any question as to what the informant told him.

Hemme next contends there was not a substantial basis for finding probable cause to issue the search warrant. He asserts, among other things, the reliability and credibility of the informant is in question, there was no corroboration of the informant's information by the police officer, the affidavit lacked specific dates of drug buys by the informant, and the information alleged by the informant was stale.

The court, in *State v. Rose*, 8 Kan. App. 2d 659, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983), adopted the totality of the circumstances test for determining probable cause as set forth in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). The *Rose* court stated: "A judge, in determining whether to issue a search warrant, should consider the 'totality of the circumstances' presented and make a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in that particular place." 8

Kan. App. 2d 659, Syl. ¶ 2. "On appeal, the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. Abu-Isba*, 235 Kan. 851, Syl. ¶ 3, 685 P.2d 856 (1984).

Prior to *Gates*, a two-pronged analysis was required to establish the credibility and reliability of a confidential informant. *State v. Toler*, 246 Kan. 269, 272, 787 P.2d 711 (1990). The means by which the informant received the information, as well as the veracity of the informant or the reliability of the information, had to be shown in the affidavit. 246 Kan. at 272. These remain viable factors to be considered. *State v. Probst*, 247 Kan. 196, 202, 795 P.2d 393 (1990). There must be some indicia of accuracy of the informant's information. *State v. Olson*, 11 Kan. App. 2d 485, 491, 726 P.2d 1347, *rev. denied* 240 Kan. 805 (1986).

Mere conclusions by the affiant are not sufficient to establish probable cause. *State v. Jacob*, 8 Kan. App. 2d 729, 731, 667 P.2d 397 (1983). As stated by the court in *State v. Morgan*, 222 Kan. 149, 151, 563 P.2d 1056 (1977):

"Bald conclusions, mere affirmations of belief, or suspicions are not enough and, while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to affiant's personal knowledge to provide a rational basis upon which a magistrate can make a judicious determination of probable cause."

This statement of the law was recently approved in *State v. Probst*, 247 Kan. at 202.

An examination of the affidavit supporting the search warrant indicates the affiant, Ronald Ewing, stated he came in contact with Kasandra Riley, who resided with an individual named Christopher Pifer and gave the address in Perry, Kansas. The informant related to him that, since October 1988, she had been a guest in the home of Hemme and observed drugs and drug paraphernalia in the bedroom of the residence. She described the box that contained baggies of cocaine. Riley informed Ewing she and Pifer had purchased cocaine during the visits and gave the price of the buys. She also related she observed Pifer buy marijuana. She knew the prices charged for various quantities of marijuana and cocaine. Two sections of the affidavit read as follows:

"f) Riley advises affiant that Paul Hemme has visited her residence in the last month and had with him a quantity of cocaine and marijuana. That

Hemme is a well known source of cocaine and marijua na by users of illicit drugs. That several parties owe Hemme large sums of U.S. currency from previously fronted drugs.

"g) Riley advises affiant that she last visited the Hemme residence just prior to Christmas because of sickness and confinement to her residence by Pifer. That Hemme during this period had delivered cocaine to Pifer on one occasions [sic]."

In addition, the affidavit stated that the officer confirmed the address given by the informant as that of the defendant. The date of the affidavit was January 26, 1989.

The informant's statement, if reliable and credible, could support probable cause. What does the affidavit contain that related to her reliability and credibility? This 18-year-old woman had come to Jefferson County from Texas only recently. She was a drug user. There is no information as to her motivation to talk to officers. The affidavit is bereft of any information supporting her reliability and credibility, with the possible exception of specific information as to prices and a description of the interior of the house. The officer did not have any relationship established whereby the informant had provided reliable information in the past.

In the absence of any evidence establishing the reliability or credibility of the informant, corroboration by an independent police investigation would help establish probable cause. *State v. Olson*, 11 Kan. App. 2d at 491. But the only corroboration in the present case was confirmation of the defendant's address. This was not enough in *Olson* to establish the reliability or credibility of the informant, and it is not enough here. The better practice would have been to bring her before the magistrate and let her testify in person under oath.

A more serious problem with the affidavit is whether it relies upon stale information. The Kansas Supreme Court has stated: "The lapse of time which would tend to remove all probable cause for issuance of a search warrant by destroying any reasonable belief that drugs remain on the premises will depend on the facts and circumstances of each particular case." *State v. Jacques*, 225 Kan. 38, 42, 587 P.2d 861 (1978).

In that case, two days was not fatal. In *Hearron v. State*, 10 Kan. App. 2d at 232, an informant had seen stolen property within 72 hours of execution of the warrant.

The court, in *United States v. Myers*, 553 F. Supp. 98 (D. Kan. 1982), set forth the principle that probable cause dissipates with time unless the criminal activity is continuous. 553 F. Supp. at 103. The court summarized four factors to consider when analyzing whether the information relied upon in obtaining a warrant is stale. The first is whether the criminal activity is continuous. The second is the time between the issuance of the warrant and the alleged criminal activity relied upon to establish probable cause. The third is the use of present or past tense verbs in the affidavit supporting a search warrant. Finally, the court looks at the likelihood the contraband would be moved from the location of the proposed search. Taking all of these factors into consideration, the court determined there must be a logical link between the place to be searched, the property to be seized, and the criminal conduct. 553 F. Supp. at 104-05.

Here the informant stated she first began to observe the criminal conduct in October 1988. She was last in Hemme's residence before Christmas of that same year. The affidavit for search warrant was prepared on January 26, 1989, at least a month later. Two to three months is not a long enough period to indicate a continuing course of conduct where there is no indication of the number of the informant's visits nor their regularity. The lapse of one month between the alleged criminal activity and the informant's statement to the deputy is also significant. Although she said the defendant made a house delivery to her in January, which might indicate a continuing pattern of sales, that is not sufficient to conclude he was still keeping drugs in his house, nor is the fact that people owed him money for drugs.

We find there was insufficient probable cause to believe the drugs would still be at the defendant's residence at the time of the issuance of the search warrant based upon the lack of sufficient information as to the reliability and credibility of the informant and the lack of sufficient corroboration by the police when coupled with the lapse of time between her observations and her statement to the deputy.

## BEYOND PROBABLE CAUSE

As we now know, the search warrant did, indeed, result in the seizure of 90 pounds of marijuana and other items. Must that evidence be suppressed?

In 1984, the United States Supreme Court carved out what has been referred to as the "good faith" exception to the exclusionary rule. See *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984). The Court determined that the purpose of the exclusionary rule was to deter police misconduct. 468 U.S. at 916. The Court stated that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918. The Court established four situations in which the evidence seized pursuant to an invalid warrant should be suppressed. They are: (1) when the judge or magistrate is deliberately misled by false information; (2) when the judge or magistrate wholly abandons his or her neutral and detached role; (3) when the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; and (4) when there was so little indicia of probable cause contained in the affidavit for the warrant that it was entirely unreasonable for an officer to believe the warrant was valid. 468 U.S. at 923.

The Kansas Supreme Court addressed *Leon* in *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (1989). This opinion left open the question of whether the good faith exception to the exclusionary rule is operative in Kansas or whether it is encumbered with another layer or degree of probable cause finding. In *Doile*, the court found no probable cause existed for the warrant in question and stated that, to determine whether suppression was appropriate, the court must consider *Leon*. 244 Kan. at 501. The majority then analyzed the affidavit in light of the four situations in *Leon* and determined none of the exceptions were applicable. 244 Kan. at 502.

Under *Leon*, it appears this would be the end of the analysis and the evidence would not be suppressed, but the court went on to quote some preliminary probable cause language from earlier in the *Leon* opinion and concluded that, if the magistrate erred in applying the totality of the circumstances test in finding probable cause, the evidence must be suppressed. 244 Kan. at 503. Thus, the court suppressed the evidence without finding bad faith because there had been a five-year lapse in drug sales

at the residence and because the affidavit did not contain any factual allegations from which the judge could have found probable cause. Apparently, the majority of the court found a level of gross failure to show probable cause, which the minority referred to as absence of objectivity by the magistrate and unreasonableness of the officers to believe the warrant was valid and which would leave the rule of *Leon* intact.

Recently, the Kansas Supreme Court again addressed the good faith exception as set forth in *Leon*. *State v. Probst*, 247 Kan. 196. In *Probst*, the trial judge, ruling upon the search warrant he had issued, found no probable cause for the warrant to have been issued, and also found that the magistrate (himself) had wholly abandoned his neutral or detached role and that no reasonable officer would have relied upon the probable cause determination. 247 Kan. at 205. Thus, the trial court found the good faith exception did not apply. 247 Kan. at 205-06.

The Supreme Court agreed and stated, "We conclude that under the unusual circumstances here, the district court did not err in finding that the affidavit for the search warrant lacked probable cause and that the good faith exception as promulgated by *Leon* did not apply in this case." 247 Kan. at 207.

We conclude the Kansas Supreme Court, in *Probst*, approved the good faith exception to the exclusionary rule, although it did not apply in that case.

Having found probable cause lacking, we now turn to the question of whether the good faith exception applies in this case, or rather whether this evidence should be excluded in furtherance of the exclusionary rule based upon the four tests of *Leon*.

We look at each *Leon* test for exclusion for bad faith. First, there is no evidence of any false statement in the affidavit. The location of Hemme's residence was correct, and the drugs and other items were where the informant said they would be.

When we consider the neutrality and detached role of the magistrate, we note this was a reasonably close question. Although we disagree as to whether reliability and credibility of the informant were sufficiently demonstrated by the affidavit, she was a known person, giving a voluntary statement, who demonstrated a knowledge of the interior of the house, where things would be found, and the various prices for drugs. The fact that she was a

drug user does not automatically exclude her ability to be reliable. Who else would be more likely to know what she knew? The 30-day delay is also a far cry from the five years of *Doile*, and the home delivery was some evidence of continuing activity. This affidavit did not contain mere conclusions. It contained facts. While we disagree with the magistrate's conclusion of the totality of the circumstances, he did not lose his neutrality, detached role, or objectivity in reaching his conclusion.

The specificity of this warrant is quite sufficient. The place, a residence, was located as described. The things to be seized, *i.e.*, drugs, scale, etc., were not only described, but were found.

Finally, looking at the indicia for probable cause for the officer serving the warrant to believe it was valid, we find nothing out of the ordinary. It is a routine search warrant based upon an officer's affidavit which in turn was based upon the statement of a person who gave him a lot of facts, one of which—the location of the residence—he was able to verify.

None of the four *Leon* tests for exclusion of evidence for bad faith require exclusion of the evidence in this case. Based upon the *Leon* good faith exception to the exclusionary rule, we affirm the denial of the motion to suppress.